# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **DOMINIQUE JOHNSON O/B/O, D.J.**, a minor, <br><br> **Plaintiff,** <br><br> v. <br><br> **NANCY A. BERRYHILL,**[1] Acting Commissioner of Social Security, <br><br> **Defendant.** | No. 17 C 1871 <br><br> Magistrate Judge Mary M. Rowland |

## MEMORANDUM OPINION AND ORDER

Plaintiff Dominique Johnson filed this action on behalf of her daughter, D.J., seeking reversal of the final decision of the Commissioner of Social Security denying her application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act (Act). 42 U.S.C. §§ 405(g), 1381 et seq. The parties have consented to the jurisdiction of the United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c), and Plaintiff has filed a request to reverse the ALJ's decision with an award of benefits or in the alternative, reversal and remand for additional proceedings. For the reasons stated below, the case is remanded for further proceedings consistent with this Opinion.

## I. PROCEDURAL HISTORY

On September 26, 2012, Dominique Johnson filed an application for SSI on behalf of her minor child, D.J., who was born on June 4, 2006, alleging that she

---

[1] Nancy A. Berryhill is substituted for her predecessor, Carolyn W. Colvin, pursuant to Federal Rule of Civil Procedure 25(d).

became disabled on September 26, 2012. (R. at 17). The application was denied initially and upon reconsideration, after which Ms. Johnson filed a timely request for a hearing. (*Id.*). On March 20, 2015, D.J. and Ms. Johnson, represented by counsel, testified at a hearing before an Administrative Law Judge (ALJ). (*Id.*).

On July 29, 2015, the ALJ denied D.J.'s request for benefits. (R. at 17–33). Applying the three-step sequential evaluation process, the ALJ found at step one that D.J. had not engaged in substantial gainful activity since September 26, 2012, her application date. (*Id.* at 20). At step two, the ALJ found that D.J. had the following severe impairments: attention deficit hyperactivity disorder (ADHD), learning disability, and borderline intellectual functioning. (*Id.*) At step three, the ALJ determined that D.J. does not have an impairment or combination of impairments that meet or medically equal the severity of any of the Listings. (*Id.*). The ALJ then determined that D.J. does not have an impairment or combination of impairments that functionally equal the severity of any of the Listings. (*Id.*). In making this determination, the ALJ found that D.J. had a marked limitation in attending and completing tasks but less than marked in the five other areas, discussed further below.

The Appeals Council denied D.J.'s request for review on January 10, 2017. (R. at 1). D.J. now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. *Villano v. Astrue*, 556 F.3d 558, 561–62 (7th Cir. 2009).

## II. STANDARD OF REVIEW

A Court reviewing the Commissioner's final decision may not engage in its own analysis of whether the plaintiff is severely impaired as defined by the Social Security Regulations. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Nor may it "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute [its] own judgment for that of the Commissioner." *Id.* The Court's task is "limited to determining whether the ALJ's factual findings are supported by substantial evidence." *Id.* (citing § 405(g)). Evidence is considered substantial "if a reasonable person would accept it as adequate to support a conclusion." *Indoranto v. Barnhart*, 374 F.3d 470, 473 (7th Cir. 2004). It "must be more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). The ALJ's decision must be explained "with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005).

Although this Court accords great deference to the ALJ's determination, it "must do more than merely rubber stamp the ALJ's decision." *Scott v. Barnhart,* 297 F.3d 589, 593 (7th Cir. 2002) (citation omitted). "[T]he ALJ must identify the relevant evidence and build a 'logical bridge' between that evidence and the ultimate determination." *Moon v. Colvin,* 763 F.3d 718, 721 (7th Cir. 2014). Where the Commissioner's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

"A child qualifies as disabled and therefore may be eligible for SSI if he has a 'medically determinable physical or mental impairment, which results in marked and severe functional limitations' and the impairment 'has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Hopgood ex rel. L.G. v. Astrue*, 578 F.3d 696, 699 (7th Cir. 2009) (quoting 42 U.S.C. § 1382c(a)(3)(C)(i)). To decide whether a child meets this definition, the Social Security Administration (SSA) employs a three-step analysis. 20 C.F.R. § 416.924(a). First, if the child is engaged in substantial gainful activity, his or her claim is denied. *Id.* Second, if the child does not have a medically severe impairment or combination of impairments, then his or her claim is denied. *Id.* Finally, the child's impairments must meet, or be functionally equivalent, to any of the Listings contained in 20 CFR pt. 404, subpt. P, app. 1. *Id.* To find an impairment functionally equivalent to one in the Listings, an ALJ must analyze its severity in six age-appropriate categories: "(i) acquiring and using information; (ii) attending and completing tasks; (iii) interacting and relating with others; (iv) moving about and manipulating objects; (v) caring for yourself; and (vi) health and physical well-being." *Id.* § 416.926a(b)(1). To functionally equal the Listings, the ALJ must find an "extreme" limitation in one category or a "marked" limitation in two categories. An "extreme" limitation occurs when the impairment interferes very seriously with the child's ability to independently initiate, sustain or complete activities. *Id.* § 416.926a(e)(3)(i). A "marked" limitation is one which interferes seriously with the child's ability to independently initiate, sustain, or complete activities. *Id.* § 416.926a(e)(2)(i).

## III. DISCUSSION

Plaintiff argues that the ALJ erred in his assessment of her abilities in the domains of acquiring and using information, interacting and relating with others, and caring for oneself. (Dkt. 15). Defendant responds that Plaintiff improperly asks this Court to reweigh the evidence. (Dkt. 18). After reviewing the record and the parties' briefs, the Court concludes that the ALJ (1) failed to provide support for his finding that D.J. had less than marked limitations in interacting and relating with others and (2) did not build a logical bridge between the evidence and his conclusion. *See Hopgood ex rel. L.G.* 578 F.3d at 697 (remanding where the ALJ "made conclusory statements that contradicted the evidence presented and failed to address portions of medical and school records that were favorable to [the child]."); *see also* 20 C.F.R. § § 416.926a(e)(3) (a "marked" limitation in two categories would amount to a finding of functional equivalence).[2]

### A. The ALJ's Domain Finding in Interacting and Relating to Others

The interacting and relating to others domain considers "how well you initiate and sustain emotional connections with others, develop and use the language of your community, cooperate with others, comply with rules, respond to criticism, and respect and take care of the possessions of others." 20 C.F.R. § 416.926a(i). "Interacting and relating require you to respond appropriately to a variety of emotional and behavioral cues"; examples include following social rules for interaction and conversation, responding to others appropriately and meaningfully,

---

[2] Because the Court is remanding on this issue, it does not address Plaintiff's other arguments.

5

working cooperatively with other children, and responding to persons in authority. *Id.* § 416.926a(i)(1). Considering the evidence in this case, the ALJ did not sufficiently explain why he found that D.J. was not markedly limited in interacting and relating to others. *See Kastner v. Astrue,* 697 F.3d 642, 648 (7th Cir. 2012) ("We have repeatedly held that an ALJ must provide a logical bridge between the evidence in the record and her conclusion.").

It is not clear to the Court how the evidence favorable to D.J. in interacting and relating to others was overcome by the other evidence relied on by the ALJ. *See Giles ex rel. Giles v. Astrue,* 483 F.3d 483, 488 (7th Cir. 2007) ("[I]t is unclear what evidence the ALJ relied upon in finding that [the child] was not markedly limited in this domain. We require an explanation of why strong evidence favorable to the plaintiff is overcome by the evidence on which an ALJ relies."); *see also Hopgood ex rel. L.G.,* 578 F.3d at 700 (finding ALJ's analysis deficient where he "failed to explain why he did not credit portions of the record that were favorable to L.G., including the teachers' reports that found L.G. had serious or obvious problems in this domain.").

The ALJ noted that D.J. was described as a "sweet girl", cited certain school records stating that her behavior did not impede her learning or the learning of others and found that the school records "do not document any disciplinary records or that the claimant sees the school social worker on a regular basis as part of the IEP [Individualized Education Program] to assist in social skills." (R. at 30). The ALJ also acknowledged the evidence of D.J.'s difficulty relating to other children,

outbursts in the classroom, psychosocial assessment reporting serious impairment in social relations, and monthly psychiatrist visits and weekly behavior therapy. Despite this, the ALJ concluded that "the records only support less than marked limitations in this domain." (R. at 30).

The ALJ focused heavily on D.J.'s "improvement" over time. But the ALJ did not explain how D.J.'s *increasing* special education services, as reported in her IEPs, factored into his conclusion that she had improved. (*see* R. at 27–28) (acknowledging increased special education time and services in 2015 compared to 2013). This analysis is flawed because it does not accurately account for D.J.'s limitations on a longitudinal basis. *See Taylor ex rel. T.L. v. Colvin*, No. 15 CV 3176, 2016 U.S. Dist. LEXIS 157477, at *35 (N.D. Ill. Nov. 14, 2016) ("An ALJ is obligated to consider a child's limitations on a longitudinal basis and not to decide the issue based on an isolated time frame within the disability period.") (citing SSR 09-2p, 2009 SSR LEXIS 2). The ALJ's analysis also does not fully consider D.J.'s functioning according to the "whole child" standard. The ALJ believed D.J.'s medication and accommodations at school were helping her to improve, but did not describe what this meant for D.J.'s functioning *relative to her non-disabled peers.*

"The functional equivalence rules require us to begin by considering how the child functions every day and in all settings *compared to other children the same age who do not have impairments.*" SSR 09-1p (emphasis added); *see also Saracco ex rel. T.H. v. Berryhill*, 2017 U.S. Dist. LEXIS 200542, *24-25 ("The regulations emphasize that a child who receives special education accommodations cannot

7

automatically be compared to non-impaired children because 'good performance in a special education setting does not mean that you are functioning at the same level as other children your age who do not have impairments.'") (citing 20 C.F.R. § 416.924a(b)(7)(iv)). To conclude that D.J. was not markedly limited in interacting and relating with others, the ALJ relied on D.J.'s lack of "disciplinary records" and that she was not seeing a social worker on a regular basis. (R. at 30). But the record shows that D.J. was seeing a psychiatrist and behavioral therapist. And her teachers reported that D.J. would scream and threaten others and have difficulty calming down without adult assistance and being removed from the classroom. As the ALJ recognized, in 2015, her special education teacher stated that D.J. had a hard time controlling herself when she did not take her medication. (*see* R. at 22). Moreover, even if the ALJ was correct that D.J. had in fact made progress under the goals set forth in her IEPs, such progress does not equate to success as compared to non-disabled children. *See A.H. ex rel. Williams v. Astrue*, No. 09 C 6981, 2011 WL 1935830, at *11 (N.D. Ill. May 18, 2011).

Finally, the ALJ found that D.J. was markedly limited in attending and completing tasks (R. at 29) but did not consider to the potential overlap between those limitations and limitations in other domains. Under the Social Security Rulings, a restriction in one area of the six functional domains can affect the child's functioning in other areas. "Children with limitations in the ability to interact and relate with others may also have limitations in other domains." SSR 09-5p. Further, "[r]ating the limitations caused by a child's impairment(s) in each and every domain

8

that it affects is not 'double-weighting' of either the impairment(s) or its effects. Rather, it recognizes the particular effects of the child's impairment(s) in all domains involved in the child's limited activities." SSR 09-4p. In light of the guidance in the Social Security Rulings, the ALJ should have discussed how D.J.'s limitations in other areas, particularly attending and completing tasks, impacted her functioning in interacting and relating to others.

**B. Summary**

The Court concludes that the ALJ's determination that D.J. had less than marked restrictions in the domain of interacting and relating to others was not supported, precluding meaningful review. When reviewing a denial of disability benefits, a court may "affirm, reverse, or modify the Social Security Administration's decision, with or without remanding the case for further proceedings." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011) (citing 42 U.S.C. § 405(g)). The Court denies Plaintiff's request to reverse and order benefits paid. The Court does not believe this case meets the standard for an award of benefits and it is not the purview of this Court to gather or reweigh evidence. *See Briscoe ex. re. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005) (citation omitted) (Reversal with an instruction to award benefits only appropriate if "all factual issues have been resolved and the record can yield but one supportable conclusion.").

Therefore, Plaintiff's motion is granted insofar as it requests remand for further proceedings. On remand, the ALJ shall reevaluate D.J.'s limitations, in all six domains, in accordance with this opinion, considering all of the evidence and

9

testimony in the record, and shall explain the basis for his findings in accordance with applicable regulations and rulings.

## IV. CONCLUSION

For the reasons stated above, Plaintiff's Motion for Summary Judgment [14] is **GRANTED**. Defendant's Motion for Summary Judgment [17] is **DENIED**. Pursuant to sentence four of 42 U.S.C. § 405, the ALJ's decision is reversed, and the case is remanded to the Commissioner for further proceedings consistent with this opinion.

Dated: April 10, 2018

E N T E R:

*Mary M Rowland*

MARY M. ROWLAND
United States Magistrate Judge